UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSE JUAN ROMERO, | ) |
| Plaintiff, | ) |
| | ) No. 21 C 1592 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| THE CITY OF CHICAGO; KIMBERLY M. FOXX, State's Attorney of Cook County; CHRISTIAN CONWAY, CARLTON FAY, CHRISTINA SENGER, Assistant State's Attorneys; ALEX LOPEZ, No. 12666, Complaining and Arresting Officer; and AGUSTIN CERVANTES, No. 14856, Assisting Officer, | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Chicago Police Officer Alex Lopez, assisted by Officer Agustin Cervantes, arrested Plaintiff Juan Jose Romero for driving under the influence ("DUI"). The Cook County State's Attorney's Office, headed by State's Attorney Kimberly M. Foxx, and assisted by Assistant State's Attorneys ("ASAs") Christian Conway, Carlton Fay, and Christina Senger, prosecuted Romero on the DUI charge. After the state court concluded that the State could not use any evidence that would have appeared on a destroyed video of the incident, the State continued the case for five months before the state court dismissed it. Romero now brings this lawsuit against Foxx and the ASAs (the "Prosecutor Defendants"), as well as Lopez, Cervantes, and the City of Chicago (the "City Defendants"). Romero contends that the ASAs, Lopez, and Cervantes engaged in a vindictive prosecution and deprived him of equal protection and due process. He also seeks to hold Foxx and the City liable under *Monell v. Department of Social Services of New York*, 436 U.S. 658, 694 (1978), for their failure to train their employees to avoid constitutional

violations. All Defendants have filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] The Court dismisses the Prosecutor Defendants with prejudice because absolute prosecutorial and Eleventh Amendment immunities bar Romero's claims against them in their individual and official capacities. Romero also has failed to sufficiently allege Lopez and Cervantes' involvement in any constitutional violation, and so the Court dismisses the claims against the City Defendants without prejudice.

## BACKGROUND[2]

While driving home from work on November 7, 2017 around 9:51 p.m., Romero was in a car accident at 5151 N. Milwaukee Avenue, Chicago, Illinois. Chicago police officers, including Lopez and Cervantes, arrived at the scene to investigate. Lopez arrested Romero for DUI and also issued him a traffic ticket for failure to yield. Romero refused to take a breathalyzer test or provide a statement. He also did not perform any field tests. Chicago police impounded and towed his car, and Romero remained in police custody from approximately 11:42 p.m. until 2:45

---

[1] The Court gave Romero until January 25, 2022 to respond to the motions to dismiss. The Court indicated that it would not consider further extensions of time or excuses from Romero concerning his need for additional time. Doc. 66. Nonetheless, Romero filed his response to the Prosecutor Defendants' motion to dismiss one day late and failed to file a response to the City Defendants' motion to dismiss. The Prosecutor Defendants have asked the Court to strike Romero's response and dismiss the case with prejudice due to Romero's history of disregarding court orders, but they also substantively responded to Romero's arguments. The City Defendants similarly asked the Court to dismiss the case with prejudice given that Romero has failed to prosecute his case against them. Romero has since filed a request to allow the response to the Prosecutor Defendants' motion to stand and to schedule oral argument to allow him to present his response to the City Defendants' motion, providing additional excuses for why he did not comply with the filing date. Docs. 72, 76. Although the Court does not find it appropriate to schedule oral argument in this case, the Court will decide the issues on the merits instead of technicalities. *See Holmes v. W. Side Veterans Admin. V.A. Hosp.*, No. 04 C 2287, 2007 WL 9813407, at *4 (N.D. Ill. Feb. 2, 2007) ("As a general rule, it is preferable to decide cases on the merits rather than on what are arguably technicalities."). Thus, the Court grants Romero's request to allow his response to the Prosecutor Defendants' motion to dismiss to stand and denies the Prosecutor and City Defendants' requests to dismiss the case with prejudice for want of prosecution. The Court warns Romero that it will not extend the same consideration to him again.

[2] The Court takes the facts in the background section from Romero's first amended complaint and presumes them to be true for the purpose of resolving Defendants' motions to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

a.m. on November 8. In his complaint against Romero, Lopez stated that a recording of the scene directly before and during Romero's arrest existed.

Upon his release from custody on November 8, Romero received a court date of December 18. But his case was continued to January 26, 2018, at which time the State provided written discovery to Romero indicating that the incident had been recorded and an extended hold had been placed on the digitally recorded data. Romero demanded production of the video, with the State agreeing to provide it at the following court date. But on March 15, the City's records department indicated that the video had been "deleted based on the department's retention schedule." Doc. 50 ¶ 10. In response, on April 27, Romero's counsel indicated he would file a motion to suppress based on the lack of video and argued that the State no longer had any probable cause to continue the case. Romero then filed the motion to suppress on June 7.

On October 17, Romero filed an amended motion to suppress based on the lack of video evidence. On February 18, 2019, Romero's counsel wrote to the State to suggest resolution of the case, claiming that the State had no good faith basis to continue prosecuting it, but counsel never received a response to the letter. The state court finally heard Romero's motion to suppress on June 10, ruling in Romero's favor. The state court "barred [the State] from presenting any evidence that would have been seen or heard if the video had been kept in existence." *Id.* ¶ 21. Romero then demanded a speedy trial in writing, with the state court confirming that the 160-day period started to run on that date. Instead of dropping the DUI case, the State sought reconsideration of the state court's decision to suppress any non-video evidence on July 9. The state court summarily rejected the motion. Romero had five subsequent court dates between July and October 2019, with the State requesting continuances at each one based on the unavailability of witnesses. On November 18, the State orally moved to *nolle prosequi*

the case, a motion the state court granted. The state court also granted Romero's motion to dismiss based on violation of the speedy trial statute that same day.

The State did not provide notice to Lopez or Cervantes of the state court's order barring testimony that would have appeared on the video of the incident. Instead, it allowed the officers to believe that they needed to continue appearing at the court hearings so as to present the appearance of a viable case. The State also did not notify the officers of the need to withdraw the criminal complaint or correct the record concerning the existence of the video.

The State's actions with respect to Romero's DUI case, continuing the case despite the lack of evidence and the running of the speedy trial clock, stand in contrast with the approach taken to DUI cases in suburban Cook County courtrooms, which include fewer continuances and court appearances. This appears to result from a State's Attorney's policy or practice of refusing to dismiss or *nolle prosequi* DUI cases arising in the City regardless of the potential for conviction.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

I.     **Claims Against the Prosecutor Defendants**

    A.     **Individual Capacity Claims**

The Prosecutor Defendants contend that various immunities, including absolute prosecutorial immunity, protect them from any claims brought against them in their individual capacities.³ In determining whether the Prosecutor Defendants enjoy absolute or qualified immunity for their actions, the Court applies a "functional approach which looks to the nature of the function performed, not the identity of the actor who performed it." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (citations omitted) (internal quotation marks omitted). "A prosecutor is absolutely immune from suit for all actions and decisions undertaken in furtherance of his prosecutorial duties." *Fields v. Wharrie*, 672 F.3d 505, 510 (7th Cir. 2012); *see also Imbler v. Pachtman*, 424 U.S. 409, 431 (1976) ("[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983."). Absolute immunity "broadly cover[s] all conduct associated with the judicial phase of the criminal process." *Bianchi v. McQueen*, 818 F.3d 309, 316 (7th Cir. 2016). "[A]bsolute immunity shields a prosecutor 'even if he initiates charges maliciously, unreasonably, without probable cause, or even on the basis of false testimony or evidence.'" *Diestelhorst v. Ryan*, 20 F. App'x

---

³ Although the parties do not clearly distinguish between claims against and defenses applicable to the Prosecutor Defendants in their individual and official capacities, absolute prosecutorial immunity is a personal defense and so only applies to claims against a defendant sued in their individual capacity and not to official capacity claims. *See Weatherspoon v. Khoury*, No. 1:20-cv-02077, 2021 WL 2401970, at *2 (S.D. Ind. June 11, 2021) ("In an 'official-capacity action, [personal] defenses are unavailable. The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, qua entity, may possess, such as the Eleventh Amendment.' Accordingly, Khoury, sued in her *official* capacity, cannot assert the *personal* defense of absolute prosecutorial immunity." (alteration in original) (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 (1985))).

544, 546 (7th Cir. 2001) (quoting *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir. 1986)). But a prosecutor's actions with respect to investigative tasks receive only qualified immunity. *Bianchi*, 818 F.3d at 316, 318.

Here, the ASAs' conduct in pursuing and managing the criminal prosecution of Romero involved core prosecutorial functions, meaning absolute immunity applies. *See id.* at 316 (absolute immunity "cover[s] all conduct associated with the judicial phase of the criminal process"); *Dixon v. Affrunti*, No. 19-3119, 2019 WL 3718786, at *2 (C.D. Ill. Aug. 7, 2019) ("[T]he decision to continue a prosecution is an action intimately associated with the judicial process."). Although Romero alleges that the ASAs "went rouge [sic], and thus lost all immunity from civil suit" by seeking continuances of his case after the court granted the motion to suppress, Doc. 50 ¶ 32, the Seventh Circuit has refused to "create a new rule that applies qualified immunity to prosecutors engaged in core prosecutorial functions if the prosecutors engaged in 'unlawful rogue conduct.'" *Jones v. Cummings*, 998 F.3d 782, 788 (7th Cir. 2021). As the Seventh Circuit reiterated, "[a] prosecutor's 'motives are irrelevant to the absolute immunity question when the actions she is accused of taking are intimately associated with the quasi-judicial phase of the criminal process.'" *Id.* (quoting *Tobey v. Chibucos*, 890 F.3d 634, 649–50 (7th Cir. 2018)). Thus, regardless of whether the ASAs acted in bad faith or "went rogue," absolute immunity bars Romero's claims against the ASAs in their individual capacities. *See Davis v. Zirkelbach*, 149 F.3d 614, 617 (7th Cir. 1998) (decision to continue prosecution, even where it may have rested on a violation of the Federal Wiretap Act, protected by absolute immunity); *Owens v. Consol. City of Indianapolis & Marion Cnty.*, No. 1:20-cv-01900, 2021 WL 1220623, at *3 (S.D. Ind. Apr. 1, 2021) (absolute immunity protected prosecutor notwithstanding the plaintiff's allegations that the prosecutor pursued baseless charges against

him, finding that such allegations related to "the evaluation of evidence, and the preparing and filing of charges").

Additionally, absolute immunity bars any claim against Foxx in her individual capacity for her alleged failure to adequately train, supervise, and control the ASAs to prevent constitutional violations. In *Van de Kamp v. Goldstein*, the Supreme Court extended absolute immunity to supervisors for constitutional violations that resulted from their failure to train and supervise other prosecutors. 555 U.S. 335, 339 (2009). The Supreme Court concluded that, although training and supervision generally involve administrative procedures, because they are connected with a prosecutor's basic trial advocacy duties, absolute immunity bars claims based on a prosecutor's alleged constitutionally inadequate supervision or training procedures. *Id.* at 344, 346; *see also Andrews v. Burge*, 660 F. Supp. 2d 868, 877 (N.D. Ill. 2009) ("Decisions about what training to provide come under the immunity umbrella."). Thus, absolute immunity bars all of Romero's claims against the Prosecutor Defendants in their individual capacities.

**B.      Official Capacity Claim Against Foxx**

Although not labeled as such, Romero also appears to assert an official capacity claim against Foxx based on the existence of a selective enforcement policy by which her office continues to pursue DUI cases in the City that do not have merit until the state court dismisses the cases for speedy trial violations, while bringing suburban DUI prosecutions to a more expeditious resolution. Romero seeks injunctive relief to prevent him from experiencing the same protracted proceedings in the future.

The Eleventh Amendment bars suits in federal court against state officials acting in their official capacities. *Ind. Prot. & Advoc. Servs. v. Ind. Fam. & Soc. Servs. Admin.*, 603 F.3d 365, 370 (7th Cir. 2010). In Illinois, Eleventh Amendment immunity extends to State's Attorneys,

7

such as Foxx. *Garcia v. City of Chicago*, 24 F.3d 966, 969 (7th Cir. 1994) (citing *Ingemunson v. Hedges*, 133 Ill. 2d 364, 370 (1990)). But the Eleventh Amendment does not shield claims against state officials for injunctive relief because "official-capacity actions for prospective relief are not treated as actions against the State." *Graham*, 473 U.S. at 167 n.14 (1985) (citing *Ex parte Young*, 209 U.S. 123, 155–56 (1908)); *Marie O. v. Edgar*, 131 F.3d 610, 615 (7th Cir. 1997) ("[S]uits against state officials seeking prospective equitable relief for ongoing violations of federal law are not barred by the Eleventh Amendment under the *Ex parte Young* doctrine."). That said, such actions may only proceed where a plaintiff seeks prospective relief from future harm and cannot be used to obtain a judgment declaring that state officials "violated federal law in the past." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). In other words, Romero must allege that he faces a real and immediate threat of future injury, with "past exposure to illegal conduct . . . if unaccompanied by any continuing, present adverse effects" insufficient. *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017). Here, although Romero claims he seeks injunctive relief to prevent future harm, he has not alleged anything to suggest he faces future injury. Instead, his claims rely solely on past conduct, and the Court cannot infer that he faces any continuing effects of the past prosecution or the immediate threat of another DUI prosecution. Therefore, because Romero does not properly seek injunctive relief, the Eleventh Amendment bars him from proceeding against Foxx on an official capacity claim.

## II. Claims Against the City Defendants

### A. Claims Against Lopez and Cervantes

Lopez and Cervantes argue that the Court should dismiss Romero's claims against them because he has failed to plead their involvement in an alleged constitutional violation. Initially,

8

Romero appears to argue that Lopez should have withdrawn the criminal complaint once the state court granted the motion to suppress because probable cause no longer existed at that point. But "there is no such thing as a constitutional right not to be prosecuted without probable cause," *Serino v. Hensley*, 735 F.3d 588, 593 (7th Cir. 2013), and so Romero cannot base a claim against Lopez on his failure to withdraw the complaint or amend the police report to reflect the state court's ruling. *Id.* at 592.

Romero further frames his claims as ones for deprivation of due process and equal protection. To the extent any such claims are viable, Romero has failed to plausibly allege Lopez and Cervantes' involvement in the alleged constitutional violations. "Individual liability pursuant to § 1983 requires personal involvement in the alleged constitutional deprivation." *Carmody v. Bd. of Trs. of Univ. of Ill.*, 893 F.3d 397, 401 (7th Cir. 2018) (citation omitted). Romero must allege "a causal connection between (1) the sued officials and (2) the alleged misconduct." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017). And specifically with respect to an equal protection claim, personal involvement "requires specific intent to discriminate" by each sued official. *Taylor v. Ways*, 999 F.3d 478, 494 (7th Cir. 2021).

Here, instead of alleging how Lopez and Cervantes caused any constitutional violation, Romero's allegations focus on the actions of the ASAs in continuing to prosecute the case. Romero does not allege that Lopez or Cervantes had any involvement in the ASAs' decisions regarding the prosecution of the case. And he further undermines any basis for finding Lopez and Cervantes contributed to the violations by acknowledging that they had no knowledge of the ruling on the motion to suppress or that their services to prove up the case were no longer necessary. *See, e.g.*, Doc. 50 ¶¶ 36, 38–39, 43. Nor does Romero include any basis from which the Court could infer that Lopez and Cervantes had a specific intent to discriminate against him.

9

Therefore, because Romero has failed to include any allegations suggesting Lopez or Cervantes' personal involvement in the alleged violations, Romero cannot proceed against them.

B.   **Claim Against the City**

Although the City cannot be held liable under § 1983 based on *respondeat superior*, *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015), pursuant to *Monell*, a plaintiff can sue a municipality under § 1983 when the municipality's policy or practice was the "moving force of the constitutional violation." *Monell*, 436 U.S. at 694. To state a *Monell* claim against the City, Romero must allege (1) an express policy that, when enforced, causes a constitutional violation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policymaking authority. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). Romero appears to advance a claim under the second prong, alleging that the City failed to properly train its police officers to avoid constitutional violations. This requires Romero to "plead factual content that allows the court to draw the reasonable inference" that the City had a custom or practice of failing to properly train its employees, *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678), and that the inadequate training amounted to "deliberate indifference to the rights of persons with whom the police come into contact," *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

"Although a municipality may be directly liable for constitutional violations by its officers when the municipality evinces a deliberate indifference to the rights of the plaintiff by failing to train adequately its officers to prevent the violation, there can be no liability under *Monell* for failure to train when there has been no violation of the plaintiff's constitutional

rights." *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007). Given Romero's failure to allege that Lopez or Cervantes violated his constitutional rights, he cannot sustain a failure to train *Monell* claim against the City. *See Swanigan v. City of Chicago*, 775 F.3d 953, 963 (7th Cir. 2015) ("If a plaintiff fails to prove a violation of his constitutional rights in his claim against the individual defendants, there will be no viable *Monell* claim based on the same allegations.").

## CONCLUSION

For the foregoing reasons, the Court grants the Prosecutor and City Defendants' motions to dismiss [56], [57]. The Court dismisses Romero's claims against the Prosecutor Defendants with prejudice. The Court dismisses Romero's claims against the City Defendants without prejudice. To the extent that Romero can amend his claims consistent with Rule 11 and this Opinion, the Court will allow Romero one final opportunity to do so by April 15, 2022. If Romero fails to file an amended complaint by that date, the Court will dismiss this case in its entirety with prejudice.

Dated: March 24, 2022

                                              SARA L. ELLIS
                                              United States District Judge